**UNITED STATES, Appellee,**

v.

**Anibal ORTIZ, Defendant–Appellant.**

**United States, Appellant,**

v.

**Anibal Ortiz, Defendant–Appellee.**

Nos. 98–1560, 98–1685.

United States Court of Appeals,
First Circuit.

Heard March 3, 1999.

Decided June 2, 1999.

Robert D. Dimler, by appointment of the Court, for defendant.

Jennifer Zacks, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for the United States.

Before BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Defendant-appellant Anibal Ortiz challenges his money laundering convictions entered pursuant to a jury verdict, contending that the district court erred in denying his motion to suppress certain post-arrest statements. Because we find that the statements were admitted in violation of Ortiz's Fifth Amendment rights, we vacate the convictions and remand for further proceedings.

"[W]e recite the facts as found by the district court to the extent they derive support from the record and are not clearly erroneous." *United States v. McCarthy,* 77 F.3d 522, 525 (1st Cir.1996). On November 14, 1997, Ortiz was arrested at his place of employment on charges of money laundering. At the time of the arrest, the arresting officer, Special Agent Doo, read Ortiz his *Miranda* rights in English. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When asked if he wanted an attorney, Ortiz stated that he did. Agent Doo immediately ceased questioning Ortiz, seated him on a couch, handcuffed him, and left the room. Shortly thereafter, two other officers, Agents O'Neil and Navarro, approached Ortiz and re-read him his *Mi-*

*randa* rights a second and third time, first in Spanish and then in English.

■ According to the district court, Ortiz then initiated conversation with the officers by inquiring about the charges against him. Agent Navarro responded that Ortiz was being charged with money laundering and asked whether he wanted to cooperate. Ortiz stated that he did. A close reading of the record, however, reveals a different sequence of events. The uncontroverted testimony of Agent Navarro and Ortiz shows that *immediately* after reading Ortiz his *Miranda* rights, Agent Navarro asked Ortiz whether he wanted to cooperate. Ortiz stated that he did, and only then inquired about the charges against him.[1] Ortiz ultimately signed two forms waiving his *Miranda* rights and made a number of self-incriminating statements. To the extent that the district court's findings are inconsistent with this uncontroverted testimony, they are clearly erroneous.

■ *Miranda* and *Edwards v. Arizona,* together, provide that when a suspect asserts his right to counsel, interrogation must cease and the police may not reinterrogate the suspect until counsel is present, unless the suspect himself initiates further conversation. *See* 384 U.S. at 473–74, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Because the facts of this case parallel those of *Edwards,* we recite the facts of that Supreme Court case in some detail.

The defendant in *Edwards* was arrested at his home and taken to a police station where an officer informed him of his *Miranda* rights. Like Ortiz, Edwards asserted his right to counsel, at which point police questioning ceased and he was taken to a county jail. The next day, before counsel had been made available to Edwards, two different officers approached Edwards in jail, told him that they wanted to talk to him, and again advised him of his *Miranda* rights. Edwards stated that he was willing to cooperate and implicated himself in the crime. Prior to trial, Edwards moved to suppress his confession on the ground that his *Miranda* rights had been violated when the officers returned to question him after he had invoked his right to counsel. The trial court denied the motion and the Arizona Supreme Court affirmed, concluding that Edwards had waived his right to counsel when he voluntarily gave his statements to the police. The Supreme Court, however, reversed, holding that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards,* 451 U.S. at 484.

■ The government's attempt to distinguish *Edwards* hinges entirely on its argument that Ortiz, after receiving *Miranda* warnings, asked about the charges against him and thereby "initiated" conversation. According to the government, the officers' prior recitation of two additional sets of *Miranda* warnings was not, strictly speaking, "interrogation." *Cf.*

---

1. The relevant portion of Agent Navarro's testimony is as follows:

Q: What did you say to [Ortiz after you first approached him] and what did he say to you?

A: Ah, I went over to him and I read him his Miranda rights in Spanish. And I asked him if he understood. He said yes. Then Special Agent O'Neil read his Miranda rights in English, and he understood them.

Q: All [sic] right. Did he say anything else at that point?

A: Ah, we asked him if he wanted to cooperate with us. And he said yes. So I indicated for him to sign, you know, the waiver.

Similarly, Ortiz testified that after Agent Navarro delivered *Miranda* warnings,

[he] told me that, explained to me that if I were to answer their questions, I would help myself, and I had nothing to hide. He also told me at that time that I could cooperate with them, no problem. I asked him in Spanish what I was charged with. And he told me it was money laundering.

*Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (defining "interrogation" as "express questioning ... [or] any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect").

Here, the uncontroverted evidence shows that after Ortiz had asserted his right to counsel to the first officer, the other officers not only delivered a second and third set of *Miranda* warnings, but then immediately proceeded to ask Ortiz whether he wanted to cooperate. The officers thus reinitiated interrogation in violation of *Edwards. See Minnick v. Mississippi,* 498 U.S. 146, 147, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (stating that "once the accused requests counsel, officials may not *reinitiate questioning* 'until counsel has been made available' to him") (citing *Edwards,* 451 U.S. at 484–485) (emphasis added).

It is quite true that in *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), a closely divided Supreme Court held that the police could reinterrogate, assuming a waiver after new *Miranda* warnings, where a defendant "initiated" the conversation, *see Edwards,* 451 U.S. at 484–85; and the plurality opinion in *Bradshaw* treated as initiation a defendant's innocuous inquiry ("Well, what's going to happen to me now?"), *Bradshaw,* 462 U.S. at 1045. But while *Bradshaw* obviously qualifies *Edwards,* eight of the Justices still required that the defendant initiate a new conversation, and that did not occur in this case. If *Edwards* is to be further modified, *cf. Bradshaw,* 462 U.S. at 1047–51 (Powell, J., concurring), it is for the Supreme Court to do it.

Ortiz's self-incriminating statements, elicited in violation of *Miranda* and *Ed-*

*wards,* were introduced into evidence at his trial. There has been no suggestion that the introduction of this evidence was harmless, and our independent review of the record convinces us that the error was not harmless. We therefore **vacate** Ortiz's convictions and **remand** for further proceedings consistent with this opinion.[2]