IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 15, 2002 Session

## STATE OF TENNESSEE v. CHARLES WAYNE SAWYER

**Direct Appeal from the Circuit Court for Marshall County**
**No. 14856     Charles Lee, Judge**

_____

**No. M2001-01062-CCA-R9-CO - Filed September 26, 2003**

_____

A Marshall County grand jury indicted the defendant, Charles Wayne Sawyer, for aggravated sexual battery. The defendant filed a motion to suppress a statement that he allegedly made to the police without first being advised of his rights under <u>Miranda</u>. He made the alleged statement in response to a police officer's reading of the affidavit of complaint supporting his arrest warrant. The trial court, after conducting an evidentiary hearing, granted the defendant's motion to suppress his statement, finding that the reading of the affidavit was the functional equivalent of interrogation and therefore should have been prefaced by an admonishment of the defendant's constitutional rights. The state, with the trial court's permission, filed an interlocutory appeal, and pursuant to the state's Rule 9 application, this Court agreed to review the state's appeal. After reviewing the evidentiary hearing and other materials presented to this Court, we find that the trial court properly suppressed the defendant's statement and therefore affirm the judgment below.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Paul G. Summers, Attorney General & Reporter; Kim R. Helper, Assistant Attorney General; Mike McCowen, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellant, State of Tennessee.

Michael E. Gilmer, Columbia, Tennessee, for the appellee, Charles Wayne Sawyer.

**OPINION**

**Factual Background**

In its order granting the defendant's motion to suppress, the trial court made certain findings of fact. The court found that two Marshall County police officers, accompanied by a Maury County police officer, went to the defendant's home in Maury County where the Marshall County officers

placed the defendant under arrest. While at the defendant's home, a Marshall County police officer advised the defendant that he was under arrest, read him the arrest warrant, told him that the police were going to take him to jail for questioning, and advised him of the amount of his bond. The defendant was allowed to gather some personal items before leaving his home. The trial court noted that there is a factual dispute regarding whether the police had any conversations with the defendant en route to the jail. The officers claim that they had no conversations with the defendant during the car ride, while the defendant claims that one of the police officers read him the arrest warrant again and advised him that his cooperation would facilitate the process. The trial court refrained from accrediting either version of the events.

After approximately thirty minutes from the time of his arrest, the defendant arrived at the Marshall County Sheriff's Department where he was taken into a detective's office for questioning. A detective then read the affidavit of complaint supporting the arrest warrant to the defendant. The affidavit states, in pertinent part, that

> on or about July 22, 2001 Charles Sawyer did rub the leg and vaginal area of [the child[1]] who is 12 years old. The incidence [sic] occurred at 1489 Bridle lane [sic] in Chapel Hill. This did occur in Marshall County, Tennessee.

The police officer who read the affidavit testified that the defendant responded to the reading of the affidavit by making a statement. In the alleged statement the defendant admitted rubbing the leg of the child, but denied touching her vaginal area. While the defendant denies making any statement, the court found that it was unnecessary to make a finding as to whether the defendant actually did respond to the reading of the affidavit by making a statement. The trial court did conclude, however, that the police officers read the affidavit to the defendant only once and that this reading occurred when the defendant was in the detective's office at the Marshall County Sheriff's Department. The court also found that the police officers "made the defendant no promises [n]or attempted to purposefully elicit a response from the defendant."

The court then applied these facts to the law regarding custodial interrogation. The court noted that the rules announced in Miranda and its progeny are only applicable if the defendant is both in custody and being interrogated. In these custodial interrogation situations, the police officers are required to apprise the defendant of his or her constitutional rights per Miranda, or any statements made by the defendant, regardless of whether they were voluntarily made, are inadmissible. The trial court concluded that because the defendant was clearly in custody when the police read him the affidavit of complaint, the admissibility of any statement stemming from that reading turns on the issue of whether the reading of the affidavit was actual interrogation or the functional equivalent thereof. Because the reading of the affidavit was not "spontaneous to [the defendant's] arrest" but was thirty minutes after his arrest, because the reading took place at the sheriff's department, and because the allegations contained in the affidavit were very specific, the court concluded that the

---

[1] The child's name, which is included in the actual affidavit of complaint, has been omitted per the policy of this Court to refrain from referring to underage victims of sexual abuse by name.

police officer reading the affidavit should have known that the reading of the allegations was "reasonably likely to elicit an incriminating response from the defendant." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Accordingly, the trial court found reading the affidavit of complaint to be the functional equivalent of interrogation and any statements made in response to that reading must be suppressed.

As noted above, the state filed an interlocutory appeal challenging the propriety of the trial court's grant of the defendant's motion to suppress. The state argues that the trial court improperly granted the defendant's motion because the defendant made a spontaneous statement that was not responsive to police action. We respectfully disagree and accordingly affirm the trial court's suppression of the defendant's alleged statement.

**Standard of Review for Motions to Suppress**

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999).

**Custodial Interrogation**

The Fifth Amendment to the United States Constitution guarantees an individual a right against self-incrimination, and in order to protect this right, the United States Supreme Court has held that police officers interrogating an individual in custody must first follow certain procedural safeguards advising the individual of his or her rights under the Fifth Amendment. See Miranda v. Arizona, 384 U.S. 436 (1966); Rhode Island v. Innis, 446 U.S. 291 (1980). In order to trigger this requirement, and individual must be both be in custody and be interrogated. See Innis, 446 at 301. Custody has been defined by the Court as a situation in which a suspect has been placed under formal arrest or has been "otherwise deprived of his [or her] freedom of action in any significant way." Miranda, 384 U.S. at 444. Interrogation may be both express questions or their functional equivalent, i.e. "any words or actions on the part of the police (other than those attendant to arrest and custody) that the police should know are reasonably likely to elicit incriminating information" or any "practice that the police should know is likely to evoke an incriminating response from a suspect." Innis, 446 U.S. at 301.

Before initiating a custodial interrogation, the police must advise individuals that they have the right to remain silent; that any statement that they make may be used against them; that they have

the right to the presence of an attorney during questioning; and that if they cannot afford to hire an attorney, one will be appointed to represent them. See Miranda, 384 U.S. at 444. Any statements made during custodial interrogation without the benefit of these warnings are inadmissible in court. See Dickerson v. United States, 530 U.S. 428 (2000).

When reviewing whether the trial court properly granted the defendant's motion to suppress in the instant case, we must first determine whether the defendant was subjected to custodial interrogation before being advised of his rights under Miranda. The trial court found that the defendant was unquestionably in custody at the time that he made the alleged statement. We agree with the trial court's finding. The defendant had been placed under formal arrest prior to being transported to the sheriff's department where he made the alleged statement, and, as noted earlier, the Supreme Court has defined custody to include situations in which the suspect has been placed under formal arrest. See Miranda, 384 U.S. at 444. Indeed, the State does not dispute that the defendant was in custody. Therefore, the disposition of this appeal turns on whether the police action of reading the defendant the affidavit of complaint supporting the arrest warrant is tantamount to interrogation or its functional equivalent.

This issue of whether reading the affidavit in support of a defendant's arrest warrant to the defendant when the defendant was arrested thirty minutes prior to the reading and while the defendant was in a detective's office is one of first impression for this state. In its order, the trial court cites several cases with fact patterns that are similar to those of the instant case, but ultimately found them all distinguishable from the facts of the instant case, concluding that the cases were distinguishable because the defendants in each case either made spontaneous statements that were not the result of interrogation or its functional equivalent or made statements in response to the reading of an arrest warrant, which does not contain the specific allegations that an affidavit in support of an arrest warrant contains. The trial court concluded that the reading in a detective's office of the affidavit in support of the arrest warrant, which is specific and reads as an accusation, coupled with the thirty or more minute delay between the defendant's arrest and the reading of the affidavit, indicated that the police should have known that their action was reasonably likely to elicit an incriminating response. See Innis, 446 U.S. at 301.

In the 2001 case of State v. Walton, 41 S.W.3d 75 (Tenn. 2001), our supreme court visited the issue of when Miranda warnings are required, articulating the rationale for these warnings. See id. at 81-82. The court explained that the prophylactic rules set forth in Miranda were designed to protect one's right against self-incrimination. See id. Our federal constitution has codified this right in its Fifth Amendment, which provides that "[n]o person . . . shall be compelled in any criminal case to be witness against himself." U.S. Const. art. V. The analogous provision in Tennessee's state constitution is set forth in Article I, section 9, which guarantees that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. As the supreme court reiterated in Walton, the court has traditionally interpreted the analogous state provision to be no broader than its federal counterpart. However, "one 'significant difference between these two provisions is that the test of voluntariness of confessions under Article I, [section] 9 is broader and more protective of individual rights than the test of voluntariness under the Fifth

Amendment." Walton, 41 S.W.3d at 82 (quoting State v. Crump, 834 S.W.2d 265, 268 (Tenn. 1992) (citing State v. Smith, 834 S.W.2d 915 (Tenn. 1992)). Thus, when reviewing the issue presented in the instant appeal, we will examine the state action carefully, mindful of the broader protection afforded an individual's right against self-incrimination under Tennessee law.

In its order granting the defendant's motion to suppress, the trial court noted that it had failed to find analogous case law that would be instructive regarding the appropriate disposition of the defendant's motion. We have thoroughly researched the issue, as well, and have similarly failed to find analogous case law in this jurisdiction or others. We find that the case law discovered in our research is distinguishable from the instant case because the facts underlying each case reflect situations in which either (a) the defendant initiated a conversation with the police after being advised of his or her rights per Miranda, (b) the defendant made the statement at issue after being advised of the general charges against him, as opposed to a specific accusation such as one contained in an affidavit in support of an arrest warrant, or (c) the defendant made a spontaneous statement that was not responsive to police action. After summarizing the facts of each case in each of these categories, we will then address how, under the totality of the circumstances, the police action at issue here was the functional equivalent of custodial interrogation and not a spontaneous statement, a statement initiated by the defendant, or a statement made in response to being informed of the general charges against the arrestee.

Turning first to a case in which the defendant initiated a dialogue with police rather than responding to police interrogation, in State v. Jones, 49 P.3d 273 (Ariz. 2002), the Arizona Supreme Court held that the defendant waived his Miranda rights when he initiated a conversation with the police. See id. at 278. Although the defendant had been previously advised of his rights under Miranda and had requested counsel, the defendant's subsequent insistence that a police officer speak with him about his crime was a voluntary initiation of a post-Miranda discussion. See id. Accordingly, the court found that any statements stemming from this conversation were properly admitted at trial. See id. at 278-79. Conversely, police initiation of interrogation after a defendant has invoked his or her rights under Miranda warrants suppression of any statements stemming from that initiation. See, e.g., Edwards v. Arizona, 451 U.S. 477 (1981); United States v. Ortiz, 177 F.3d 108, 109-10 (1st Cir. 1999); United States v. Tyler, 164 F.3d 150, 154 (3rd Cir. 1998).

In the instant case, the defendant did not initiate discussions with police after having invoked his rights under Miranda. He was not advised of his Miranda rights until after he made the alleged statement he sought to suppress, and once he was advised of his Miranda rights, he immediately invoked his right to have counsel present during his interrogation, a request that the Marshall County Sheriff's Department honored. On these bases, we find the above case law inapplicable to the instant case.

Turning next to cases in which the defendant made a statement in response to being informed of the general charges against him or her, in Norman v. Commonwealth, No. 2925-99-1, 2000 WL 1693974 (Va. Ct. App. Nov. 14, 2000), the Virginia Court of Appeals held that police telling a defendant of the general charges pending against him was not the functional equivalent of

interrogation because such action was not reasonably likely to elicit an incriminating response. See id. at *3-*5 (citing Gates v. Commonwealth, 516 S.E.2d 731, 733 (Va. Ct. App. 1999) (holding same)). Similarly, in People v. Ealey, 272 N.E.2d 269 (N.Y. App. Div. 2000), the New York Supreme Court held that merely informing the defendant of a general accusation against him first at the time of his arrest and subsequently in response to the defendant's question about the reason for his detention was neither interrogation nor its functional equivalent. See id. at 269. Last, in United State v. Barnes, 195 F.3d 1027 (8th Cir. 1999), a police officer informed the defendant of the pending charges against him, to which the defendant responded that his actions were legal and did not constitute a crime. The Eighth Circuit held that this action was not reasonably likely to elicit an incriminating response and therefore was not the functional equivalent of an interrogation in violation of Miranda. See id. at 1029.

In the instant case, the action which evoked the alleged statement that the defendant seeks to suppress was not made by the defendant in response to having been told of the charges against him. The defendant was apprised of the charges against him at his home some thirty minutes before he made the statement at issue, and neither the police nor the defendant allege that the defendant made a statement in response to that action. The defendant allegedly made the statement at issue after a police officer read the specific allegations contained in the affidavit supporting the defendant's arrest warrant. Because these allegations were specific, naming the alleged victim, the defendant's alleged criminal actions, and the alleged date and place of this crime, and were not general in nature, naming only the defendant's indicted offense of aggravated sexual battery, we find that the defendant's case is distinguishable from those discussed above.

Turning finally to cases in which a defendant made a voluntary statement unresponsive to police action, in State v. Land, 34 S.W.3d 516 (Tenn. Crim. App. 2000), this Court refused to suppress the unsolicited statement volunteered by a defendant who had been arrested by a police officer several days earlier and who encountered this police officer in the hallway of a court building while awaiting his appointed counsel. See id. at 524-25. This Court held that the police action involved, the police officer's mere presence in the vicinity of the defendant, did not constitute interrogation. See id. The defendant's statement was not made in response to the police officer's action and therefore did not trigger the officer's duty to first advise the defendant of his constitutional rights. See id. In another Tennessee case, State v. Cyrus Wilson, No. 01C01-9408-CR-00266, 1995 WL 676398 (Tenn. Crim. App. at Nashville, Nov. 15, 1995), the state successfully sought to introduce a statement made by the defendant before he committed the murder at issue. See id. at *1. The defendant stopped a police officer to report that the victim had stolen his car. See id. This Court held that the defendant's statements to the police officer were not the product of custodial interrogation, but were rather a voluntary, spontaneously-made statement. See id. at *3; c.f. Walton, 41 S.W.3d at 85 (holding that when a defendant makes an initial voluntary statement, the voluntary statement does not trigger Miranda, but any follow-up questions in response to that initial statement do require that the defendant be Mirandized first if the police have reason to believe that the questions are reasonably likely to elicit an incriminating response). Thus, this Court held that the trial court properly denied the defendant's motion to suppress this statement. See Cyrus Deville Wilson, 1995 WL 676398, at *3.

Similarly, in other jurisdictions, courts have refused to suppress spontaneous statements made by a defendant who was not first informed of his or her rights under Miranda. In People v. Fisher, 420 N.W.2d 858 (Mich. Ct. App. 1988), the Michigan Court of Appeals held that a defendant's statement to a police officer made immediately after the defendant's arrest when the police officer had only asked the defendant his name was a spontaneous voluntary statement that did not trigger the police officer's duty to advise the defendant of his rights under Miranda. See id. at 862-63. In the Pennsylvania Superior Court case of Commonwealth v. Avondet, 654 A.2d 587 (Pa. Super. Ct. 1995), the court held that the defendant's statement made shortly after his arrest after he had been apprised that he was charged with rape was spontaneously made and therefore should not be suppressed as a statement made without the benefit of Miranda warnings. See id. at 590.

These cases all address the admissibility of statements that were not the product of custodial interrogation, but were spontaneously made. The state argues that the defendant in the instant case also volunteered the statement at issue; the defendant made the statement before the police began their interrogation. We respectfully disagree. The trial court found that the police arrested the defendant and transported him to their sheriff's department before apprising him of his rights. Therefore, the defendant had been in custody for at least thirty minutes before he was read his rights. Upon his arrival at the sheriff's department, police officers escorted the defendant into a police detective's office where the detective, who was sitting across the table from the defendant, read the defendant the affidavit in support if his arrest warrant. This affidavit contained detailed allegations supporting the defendant's arrest. Specifically, the affidavit stated that on or about a certain date, the defendant rubbed the leg and vaginal area of the alleged victim, who was twelve-years-old at the time of the incident. The affidavit also named the address and location where this alleged crime occurred. After the police officer read the defendant the allegations in the affidavit, the defendant allegedly responded that he had rubbed the victim's leg, but not her vaginal area. The police then read the defendant his rights, at which time the defendant requested an attorney and the police ceased the interrogation.

When determining whether police conduct is indeed interrogation or its functional equivalent, the intent of the police officers who made the statement or performed the questionable conduct is a relevant factor; however, the focus of our inquiry should be on the defendant's perception of the statement or conduct. See Innis, 446 U.S. at 301-02. Specifically, we must inquire whether the police conduct was conduct reasonably likely to elicit an incriminating response from the defendant. See id. at 301. We find that the specific nature of the allegations read to the defendant is such that it is unlikely that an individual would remain mute and refrain from responding to these accusations. Moreover, because the police had informed the defendant some thirty minutes earlier of the general nature of these charges and that he would be questioned at a later time, we conclude that the defendant could have reasonably assumed that since he had now arrived at the sheriff's department, had been seated in a detective's office, and was being told of the specific allegations supporting his arrest, the police had begun their interrogation of him and that some response was expected from him.

Indeed, apart from Miranda considerations, silence in the face of such a damning accusation as that contained in the affidavit of complaint might under some circumstances be considered as a tacit admission of the truth of the accusation thus constituting an exception to the hearsay rule. See Cohen, Sheppeard, Paine, Tennessee Law of Evidence, § 8.06 [4] [d] ( 4th ed. 2000). Furthermore, the defendant's silence in the face of these accusations could, without Miranda warnings, might be used to cross-examine him at trial should he elect to testify. See Fletcher v. Weir, 455 U.S. 603, 606 (1982).

Conclusion

In summary, we believe that under the totality of the circumstances of this case the reading of the affidavit of complaint was an action reasonable likely to elicit a response from the defendant and therefore amounts to an un-Mirandized interrogation. As a result the trial judge properly suppressed the defendant's alleged statement. Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE