STATE OF MAINE

PENOBSCOT, ss.

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-06-1108

FILED & ENTERED
SUPERIOR COURT

JAN 14 2008

PENOBSCOT COUNTY

STATE OF MAINE

v.

DECISION

MARK J. HARRIS,

Defendant

Before the court is defendant's motion to suppress. F. David Walker, attorney for the defendant and Michael Roberts, Deputy District Attorney, for the State of Maine.

Facts

On November 20, 2006, a detective of the Penobscot County Sheriff's Office questioned the defendant, a suspect in a recent burglary. The detective read the defendant his *Miranda* rights and he stated he understood his rights and agreed to talk to the officer. Following a number of questions, the defendant indicated that he would like to speak to a lawyer. (Defendant's Ex.1, pg. 7). The detective continued to ask the defendant additional questions; however, the State has conceded that any information obtained following the defendant's implication of his right to counsel should be suppressed.

On December 29, 2007, the defendant, while incarcerated in the Penobscot County Jail, filled out an inmate request form (State's Exhibit 1) indicating that he wanted to speak with the detective. The form indicated that it was "important and need to be today." Before meeting with the defendant, the detective talked with the defendant's lawyer. The defendant's lawyer indicated he had no problem with the defendant meeting with his client and indicated that the defendant needed to start cooperating.

The detective met with the defendant later on December 29, 2007. He read the defendant his *Miranda* rights and once again the defendant indicated he understood the rights and agreed to talk to him. Prior to the questioning, the detective indicated to the defendant that he had permission from the defendant's attorney to talk to him.

The defendant indicated during his testimony that the reason he talked with the detective was that he was told he needed to talk to him before he could see his girlfriend. However, the detective made it clear that his girlfriend could not visit him under any circumstances because she was a material witness.

During the second interview, after waiving his right to counsel and talking to the detective, the defendant once again invoked his right to counsel in the middle of the interview. On page 4 of the transcript of the second interview, ( Defendant's Ex.2) the defendant states:

> I, I got to reserve my right, I've got to speak to my lawyer before I speak to you.

The detective continued to ask questions of the defendant. On page 5 of the transcript, the defendant once again stated:

> Yeah, I, I'd like to see my lawyer. I'm not going to, I can't place a statement and, like that, you know what I mean? And if it comes too late then I guess I'm going to have to just see you at trial.

Notwithstanding the statement by the defendant, the detective continued to ask the defendant questions.

## Discussion

"[W]hen a suspect asserts his right to counsel, interrogation must cease and the police may not reinterrogate the suspect until counsel is present, unless the suspect himself initiates further conversation." *United States v. Ortiz*, 177 F.3d 108, 109 (1st Cir. 1999) (quoted in *State v. Holloway*, 2000 ME 172, ¶ 23, 760 A.2d 223, 231).

"Statements made by a defendant in custody after he has invoked his Fifth Amendment right to remain silent are admissible only if that right has been 'scrupulously honored' by the state." *State v. Rossignol*, 627 A.2d 524, 527.

The parties agree that in the initial interview on December 20, 2006 at page 17 of the transcript, the defendant unambiguously invoked his right to remain silent. However, the defendant argues that a subsequent conversation on December 29, 2006, should also be suppressed presumably based on arguments that the suspect without counsel present failed to initiate that conversation and that the State had not "scrupulously honored" his right to remain silent by conversing with him on December 29, 2006. Furthermore, the defendant argues that the statements were involuntary because they were coerced by the State because he could not see his girlfriend unless he talked to the officer.

*Right to Counsel*

In *Ortiz*, the First Circuit determined that a defendant had not initiated further conversation when immediately after he invoked counsel to one officer, he was re-read *Miranda* and then asked if he wished to cooperate by another officer and then another. In so determining, the First Circuit lengthily described the facts of *Edwards v. Arizona*, 451 U.S. 477 (1981):

> The defendant in *Edwards* was arrested at his home and taken to a police station where an officer informed him of his *Miranda* rights. Like Ortiz, Edwards asserted his right to counsel, at which point police questioning ceased and he was taken to a county jail. The next day, before counsel had been made available to Edwards, two different officers approached Edwards in jail, told him that they wanted to talk to him, and again advised him of his *Miranda* rights. Edwards stated that he was willing to cooperate and implicated himself in the crime. Prior to trial, Edwards moved to suppress his confession on the ground that his *Miranda* rights had been violated when the officers returned to question him after he had invoked his right to counsel. The trial court denied the motion and the Arizona Supreme Court affirmed, concluding that Edwards had waived his right to counsel when he voluntarily gave his statements to the

police. The Supreme Court, however, reversed, holding that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards*, 451 U.S. at 484.

*Ortiz*, 177 F.3d at 109.

*Edwards* and subsequently *Oregon v. Bradshaw*, 462 U.S. 1039 (1983) established that the relevant inquiry here is two-fold, 1) whether Harris, himself initiated the dialogue with the authorities; and assuming that such a demonstration is made 2) "the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation...'that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of circumstances.'" *Bradshaw*, 462 U.S. at 1044-45 (quoting *Edwards*, 451 U.S. at 486, n. 9).

*Right to Remain Silent*

In order to find that the statements on December 29, 2006 are admissible, the State must have scrupulously honored the defendant's right to remain silent. *See Rossignol*, 627 A.2d at 527. In determining whether the state "scrupulously honored" that right, the following factors are considered: "1) whether the police immediately cease the interrogation on the invocation of that right; 2) whether the police resume questioning only after the passage of a significant period of time and provide fresh *Miranda* warnings; and 3) whether the latter interrogation is restricted to matters distinct from the former." *Id.* Here the police did not immediately cease their interrogation, however that conversation, which occurred immediately following the invocation, is suppressed. After nine days, it appears on his own accord defendant approached the police to initiate conversation. Before that conversation, the police

provided fresh *Miranda* warnings. While the conversation involved discussion of previous matters, it was not tainted by the defendant's previous invocation. It was essentially a fresh start for the defendant with new recitation of *Miranda* and maintains the "prophylactic rule, designed to protect an accused in police custody from being badgered by police officers..." *Bradshaw*, 462 U.S. at 1044.

However, during the second interview, the defendant once again invoked his right to counsel on two occasions and the detective kept asking him questions. The court finds and concludes that the defendant initiated the second interview and knowingly and intelligently waived his right to counsel at the beginning of the second interview; however, the detective failed to terminate the interview when the defendant invoked his right to counsel in the middle of the interview.

It is hereby ordered that any statement obtained during the first interview following the defendant's implication of his right to confer with counsel on page 17 of the transcript ( Defendant's Ex. 1) is hereby suppressed.

It is further ordered that any statements obtained during the second interview following the defendant's implication of his right to counsel on page 4( Defendant's Ex. 2)where the defendant stated "I've got to speak to my lawyer" is hereby suppressed.

*Voluntariness*

"A confession is admissible in evidence only if it is voluntary; the State bears the burden of proving voluntariness beyond a reasonable doubt. In order to find a statement voluntary, it must first be established that it is the result of defendant's exercise of his own free will and rational intellect." *State v. Dion*, 2007 ME 87, ¶ 32-33, 928 A.2d 746, 752(citations and quotation marks omitted). The court hereby finds and concludes that the statements obtained from the defendant were voluntary beyond a reasonable doubt. The court does not find that the statements were made as a result of

coercion related to the defendant's desire to see his girlfriend. The detective made it very clear during the second interview that he was not to see his girlfriend under any circumstances because she was a material witness. Following this clear assertion of the fact that he was not going to see his girlfriend under any circumstances, the defendant continued to talk to the police officer. The court does not find there was any element of coercion related to the defendant's desire to see his girlfriend.

Dated: January 11, 2008

Joseph M. Jabar
Justice, Superior Court

<u>ATTORNEY FOR THE STATE</u>

Michael Roberts, Deputy District Attorney
Office of the District Attorney
97 Hammond ST
Bangor ME 04401


<u>ATTORNEY FOR THE DEFENDANT</u>

F. David Walker Esq.
P O BOX 1401
Bangor  ME  04401